# TABLE OF CONTENTS OF EXHIBITS

| EX. NO. | DESCRIPTION | PAGE |
|---------|-------------|------|
| 1 | Class Action Complaint | 4 |
| 2 | Civil Cover Sheet | 31 |
| 3 | Original Summons | 34 |
| 4 | All other documents filed in this case revealed in the public docket | 36 |

DECLARATION OF KERI E. BORDERS ISO NOTICE OF REMOVAL

740907745

# Exhibit 1

EXHIBIT 1
4

**CARLSON LYNCH, LLP**
Todd D. Carpenter (234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:    619-762-1910
Fax:    619-756-6991

*Attorneys for Plaintiff and the Putative Class*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/05/2021** at 04:48:25 PM
Clerk of the Superior Court
By Mallori Dixon, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

MAYRA MOORE, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

PLUM, INC. D/B/A PLUM ORGANICS, a California corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.:    37-2021-00014695-CU-MC-CTL

[E-FILE]

**CLASS ACTION COMPLAINT**

1. **Violation of California's Unfair Competition Laws ("UCL"); Cali. Bus. & Prof. Code §§ 17200, *et seq*.**

2. **Violation of California's False Advertising Laws ("FAL"); Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

3. **Violations of California's Consumer Legal Remedies Act ("CLRA"); Cal. Civ. Code §§ 1750, *et seq*.**

4. **Breach of Express Warranty**

5. **Breach of Implied Warranty**

**[DEMAND FOR JURY TRIAL]**

Plaintiff Mayra Moore ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Plum, Inc. dba Plum Organics ("Plum" or "Defendant"), based on Defendant's misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of its baby food products, which contain levels of toxic heavy metals. Plaintiff makes the following allegations based on the investigation of her counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## INTRODUCTION

1.    This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendant has misrepresented and falsely advertised that the baby food products it sells

**EXHIBIT 1**
**5**

are, among various things, organic, non-GMO, free from artificial preservatives, and safe and suitable for consumption by infants and young children.[1]

2.      Parents and other caregivers, including Plaintiff and members of the Class, reasonably believe that the baby food they purchase will be healthy, nutritious, and free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"), revealing its findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[2] Plum did not cooperate with the Subcommittee's investigation, leaving the Subcommittee gravely concerned about Plum's lack of transparency.

3.      Additionally, Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals— tested a variety of baby foods to determine the levels of heavy metals contained in their products and published their report in or around October 2019 ("Healthy Babies Bright Futures Report").[3] The Healthy Babies Bright Futures Report revealed that several of Defendant Plum's products contained various levels of toxic heavy metals.[4]

4.      Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

5.      Defendant Plum knew that the presence of toxic heavy metals in its baby food products was material to consumers, which is evidenced by its representations that its baby food products are tested for such substances. Yet Defendant Plum chose to omit and conceal that its baby food products contained, or were at risk of containing, levels of heavy toxic metals, and therefore deceptively misled Plaintiff and members of the Class that purchased these products in reliance on Plum's representations.

---

[1] *See e.g.*, https://www.plumorganics.com/products/peaches-baby-food/; *see also* https://www.walmart.com/ip/Plum-Organics-Jammy-Sammy-Peanut-Butter-Strawberry-5-1oz-6-Packs-of-5/902827112.

[2] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (Feb. 4, 2021) ("Subcommittee Report").

[3] *See generally* Healthy Babies Bright Futures Report.

[4] *See generally id.*

**EXHIBIT 1**
**6**

6.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals in California who purchased Defendant's falsely and deceptively labeled baby food Products during the statute of limitations period, for breach of express and implied warranty, and for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over Plum and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because Plum maintains its principal place of business in California and the case is a cause not given by statute to the other trial courts.

8.      Venue is proper in the Superior Court of California, County of San Diego, because Plaintiff resides in this County, the acts and transactions giving rise to her causes of action occurred in this County, and Plum has conducted business and sold its baby food Products throughout California, including prominently in the County of San Diego, which has caused both obligations and liability of Plum to arise in the County of San Diego.

9.      The amount in controversy exceeds the jurisdictional minimum of this Court.

## THE PARTIES

10.     Plaintiff Mayra Moore ("Plaintiff Moore") is a citizen of the State of California and resides in San Diego County, California. Plaintiff Moore purchased the following products ("Products"):

      a.      Plum Organics Stage 1 (4+ months) Just Sweet Potato Organic Baby Food Pouch

      b.      Plum Organics Stage 2 (6+ months) Mango, Sweet Potato, Apple & Millet Organic Baby Food Pouch

      c.      Plum Organics Stage 2 (6+ months) Mango, Yellow Zucchini, Corn & Turmeric Organic Baby Food Pouch

      d.      Plum Organics Stage 2 (6+ months) Pea, Kiwi, Pear & Avocado Organic Baby Food Pouch

      e.      Plum Organics Stage 2 (6+ months) Peach, Banana & Apricot Organic Baby Food Pouch

      f.      Plum Organics Stage 2 (6+ months) Pear & Mango Organic Baby Food Pouch

      g.      Plum Organics Stage 2 (6+ months) Pear, Purple Carrot & Blueberry Organic Baby Food Pouch

**EXHIBIT 1**
**7**

h.     Plum Organics Stage 2 (6+ months) Pear, Spinach & Pea Organic Baby Food Pouch

i.     Plum Organics Stage 2 (6+ months) Sweet Potato, Apple & Corn Organic Baby Food Pouch

j.     Plum Organics Banana with Pumpkin Little Teethers Wafers

k.     Plum Organics Blueberry Little Teethers Wafers

l.     Plum Organics Tots Jammy Sammy–Peanut Butter & Strawberry Bar

11.     Plaintiff believed she was feeding her child healthy, nutritious foods during the time she purchased and fed her child Defendant Plum's baby food Products. Due to the false and misleading claims and omissions by Defendant Plum as described herein, Plaintiff was unaware that the baby food Products sold by Plum contained any level of toxic heavy metals, and Plaintiff would not have purchased the products if that information had been fully disclosed.

12.     Defendant Plum is a Delaware public benefit corporation, with its principal place of business and headquarters located at 1485 Park Avenue, Suite 200, Emeryville, California, 94608. Plum was acquired by Campbell Soup Company in 2013. Defendant Plum does business throughout the United States, and manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products online and at brick-and-mortar retail stores.

13.     The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names.  Upon information and belief, each defendant designated as a Doe is in some manner responsible for the occurrences alleged herein, and Plaintiff and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## FACTUAL ALLEGATIONS

**A.     Defendant Falsely Marketed and Advertised its Baby Food Products**

14.     Defendant Plum manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the Plum Organics label. Plum makes various representations about its Products, including that they are organic, non-GMO, and contain "no added preservatives or artificial flavors."[5]

---

[5] *See e.g.*, https://www.plumorganics.com/products/peaches-baby-food/; *see also* https://www.walmart.com/ip/Plum-Organics-Jammy-Sammy-Peanut-Butter-Strawberry-5-1oz-6-Packs-of-5/902827112.

**EXHIBIT 1**
**8**

15.     Plum claims on its website that it is confident in the safety and quality of its products, and its top priority is to serve children healthy, nutritious foods made from the best ingredients.[6]   Plum promises that it is committed to minimizing environmental contaminants including heavy metals within its products, and assures its products are safe to eat.[7]

16.     The products at issue are various types of Plum's baby food products that contain, or are at risk of containing, heavy metals, including but not limited to the Products purchased by Plaintiff,[8] and may include other Plum Organics baby food Products, such as:

- Plum Organics Stage 1 (4+ months) Just Peaches Organic Baby Food Pouch
- Plum Organics Stage 1 (4+ months) Just Sweet Potato Organic Baby Food Pouch
- Plum Organics Stage 1 (4+ months) Just Mangos Organic Baby Food Pouch
- Plum Organics Stage 1 (4+ months) Just Prunes Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Banana & Pumpkin Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Banana, Zucchini & Amaranth Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple Butternut Squash & Granola Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear Blueberry Avocado & Granola Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Strawberry Banana & Granola Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Mango Carrot & Coconut Cream Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Blackberry & Coconut Cream Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Cauliflower & Leek Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pumpkin, banana, Papaya & Cardamom Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Plum, Berry & Barley Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Raspberry, Spinach & Greek Yogurt Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Spinach & Avocado Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Raisin & Quinoa Organic Baby Food Pouch

---

[6] *Plum Organics, FAQs*, https://www.plumorganics.com/faqs/

[7] *Id.*

[8] Plaintiff reserves the right to amend this definition upon completion of discovery.

CLASS ACTION COMPLAINT

**EXHIBIT 1**
**9**

- Plum Organics Stage 2 (6+ months) Apple & Broccoli Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple & Carrot Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Butternut Squash, Carrot, Chickpea & Corn Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Carrot, Bean, Spinach & Tomato Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Guava, Pear & Pumpkin Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Kale, Corn, Carrot & Tomato Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Mango, Sweet Potato, Apple & Millet Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Mango, Yellow Zucchini, Corn & Turmeric Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pea, Kiwi, Pear & Avocado Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Peach, Banana & Apricot Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Peach, Pumpkin, Carrot & Cinnamon Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear & Mango Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear, Green Bean & Greek Yogurt Organic Food Pouch
- Plum Organics Stage 2 (6+ months) Pear, Purple Carrot & Blueberry Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear, Spinach & Pea Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pumpkin, Spinach, Chickpea & Broccoli Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Sweet Potato, Apple & Corn Organic Baby Food Pouch
- Plum Organics Stage 3 (6+ months) Carrot, Spinach, Turkey, Corn, Apple & Potato Organic Baby Food Pouch
- Plum Organics Stage 3 (6+ months) Carrot, Sweet Potato, Corn, Pea & Chicken Organic Baby Food Pouch
- Plum Organics Stage 3 (6+ months) Carrot, Chickpea, Pea, Beef & Tomato Organic Baby Food Pouch
- Plum Organics Apple with Spinach Cereal Super Puffs
- Plum Organics Strawberry with Beet Cereal Super Puffs
- Plum Organics Mango with Sweet Potato Cereal Super Puffs
- Plum Organics Blueberry with Purple Sweet Potato Cereal Super Puffs
- Plum Organics Apple with Leafy Greens Little Teethers Wafers
- Plum Organics Banana with Pumpkin Little Teethers Wafers
- Plum Organics Blueberry Little Teethers Wafers
- Plum Organics Tots Mighty 4 Blends Mango & Pineapple, White Bean, Butternut Squash, & Oat Organic Baby Food Pouch

EXHIBIT 1
10

- Plum Organics Tots Mighty 4 Blends Sweet Potato, Banana & Passionfruit, Greek Yogurt & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Strawberry Banana, Greek Yogurt, Kale, Oat & Amaranth Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Apple, Blackberry, Purple Carrot, Greek Yogurt & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Banana, Kiwi, Spinach, Greek Yogurt & Barley Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Banana, Peach, Pumpkin, Carrot, Greek Yogurt & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Guava, Pomegranate, Black Bean, Carrot, & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Pear, Cherry, Blackberry, Strawberry, Black Bean, Spinach & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty Veggie Sweet Potato, Apple, Banana, Carrot Organic Baby Food Pouch
- Plum Organics Tots Mighty Veggie Zucchini, Apple, Watermelon & Barley Organic Baby Food Pouch
- Plum Organics Tots Mighty Veggie Spinach, Grape, Apple & Amaranth Organic Baby Food Pouch
- Plum Organics Tots Mighty Veggie Carrot, Pear, Pomegranate & Oats Organic Baby Food Pouch
- Plum Organics Tots Mighty Protein & Fiber Mango, Banana, White Bean, Sunflower Seed Butter & Chia Organic Baby Food Pouch
- Plum Organics Tots Mighty Protein & Fiber Banana, White Bean, Strawberry & Chia Organic Baby Food Pouch
- Plum Organics Tots Mighty Protein & Fiber Pear, White Bean, Blueberry, Date & Chia Organic Baby Food Pouch
- Plum Organics Tots Mighty Snack Bars–Pumpkin Banana
- Plum Organics Tots Mighty Snack Bars–Strawberry
- Plum Organics Tots Mighty Snack Bars–Blueberry
- Plum Organics Tots Mighty Morning–Banana, Blueberry, Oat, Quinoa Organic Baby Food Pouch
- Plum Organics Tots Mighty Morning Bar–Apple Cinnamon
- Plum Organics Tots Mighty Morning Bar–Blueberry Lemon
- Plum Organics Tots Mighty Nut Butter Bar–Almond Butter
- Plum Organics Tots Mighty Nut Butter Bar–Peanut Butter
- Plum Organics Tots Teensy Snacks–Peach Tot Fruit Snacks
- Plum Organics Tots Teensy Snacks–Berry Tot Fruit Snacks
- Plum Organics Tots Jammy Sammy–Peanut Butter & Strawberry Bar
- Plum Organics Tots Jammy Sammy–Peanut Butter & Grape Bar
- Plum Organics Tots Jammy Sammy–Blueberry & Oatmeal Bar

7

**EXHIBIT 1**
**11**

- Plum Organics Tots Jammy Sammy–Apple Cinnamon & Oatmeal Bar
- Plum Organics Kids Mashups–Applesauce Blueberry Carrot Pouch
- Plum Organics Kids Mashups–Applesauce Carrot & Mango Pouch
- Plum Organics Kids Mashups–Applesauce Strawberry & Beet Pouch
- Plum Organics Kids Mashups–Applesauce Strawberry & Banana Pouch
- Plum Organics Infant Gentle Organic Infant Formula with Iron, Milk-Based Powder, 0–12 Months

17. Plum uses words such as "organic" and categorizes its products by milestones such as "baby," "tots," and "kids," and stages such as "Stage 1 (4+ months)", "Stage 2 (6+ months)", "Stage 3 (6+ months)" to emphasize the foods suitability for consumption by infants and young children.

18. Plum's labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

## B. **Defendant's Marketing and Advertising Misled and Deceived Consumers**

19. Parent consumers are drawn to representations such as the ones claimed on Plum's website because parents pay attention to what ingredients are in the baby food they purchase for their child. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

20. Plum's marketing of its Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Plum's misrepresentations caused Plaintiff and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

21. In light of Plum's marketing, including its professed commitment to providing organic, non-GMO products that are free added preservatives and artificial flavors,[9] Plum knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children. Plum knew consumers purchased the Products based on the reasonable expectation that Plum manufactured the Products in a way that was prescribed by its marketing and advertising.

---

[9] *See e.g.*, https://www.plumorganics.com/products/peaches-baby-food/; *see also* https://www.walmart.com/ip/Plum-Organics-Jammy-Sammy-Peanut-Butter-Strawberry-5-1oz-6-Packs-of-5/902827112; *see also* Plum Organics, Food Philosophy, https://www.plumorganics.com/food-philosophy/.

EXHIBIT 1
12

22.     Plum intended that Plaintiff and Class Members and other consumers rely on these representations, as evidenced by the intentional and conspicuous omission on the Products' packaging that they contain dangerously levels of heavy metals, as well as Plum's advertising, marketing, and labeling of the Products as organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.[10]

23.     Based on Plum's decision to advertise, label, and market its Products as organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children, Plum had a duty to ensure that these statements were true and not misleading. As such, Plum knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

24.     However, Plum's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of its Products. Plum failed to disclose that the products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Plum intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiff and members of the Class to purchase the Products.

25.      As a result of Plum's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

26.     Plum therefore acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**C.    Heavy Metals in Plum's Products**

27.     Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ("ADHD").[11]   Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

---

[10] *See e.g.*, https://www.plumorganics.com/products/peaches-baby-food/; *see also* https://www.walmart.com/ip/Plum-Organics-Jammy-Sammy-Peanut-Butter-Strawberry-5-1oz-6-Packs-of-5/902827112; *see also* Plum Organics, Food Philosophy, https://www.plumorganics.com/food-philosophy/.

[11] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures, at 9 (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf "(Healthy Babies Bright Futures Report").

CLASS ACTION COMPLAINT

**EXHIBIT 1**

**13**

28.     The U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[12]

29.     The Healthy Babies Bright Futures Report revealed that Plum's Little Teethers Multigrain Wafers (Banana and Pumpkin) contained 49.9 parts per billion ("ppb") of arsenic, 1.4 ppb of lead, 6.3 ppb of cadmium, and .726 ppb of mercury.[13]

30.     In addition to the Healthy Babies Bright Futures Report, as mentioned above, the Subcommittee published a report revealing findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[14] According to the Subcommittee Report, Plum Organics refused to cooperate with the Subcommittee's investigation, and did not produce testing results or any specific internal testing standards for substances such as heavy metals. The Subcommittee is greatly concerned that these companies may be obscuring the presence of even higher levels of toxic heavy metals in their baby food products than their competitors' products. Plum seemed to only have provided a spreadsheet self-declaring that all of its products "meet criteria."[15]

31.     As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[16]

32.     Furthermore, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[17]

---

[12] Subcommittee Report at 9.
[13] Healthy Babies Bright Futures Report at 27.
[14] Subcommittee Report at 9.
[15] *Id.* at 3; 43–44.
[16] *Id.* at 9.
[17] *Id.*

CLASS ACTION COMPLAINT

**EXHIBIT 1**
**14**

### a. Arsenic

33.     Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[18] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[19]

34.     Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[20] Studies find lasting impacts when young children are exposed to arsenic early in life.[21] There is also no evidence that the effects of arsenic exposure are reversible.[22]

35.     The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled water.[23]

### b. Cadmium

36.     Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[24]

37.     Cadmium is a number seven on the Agency For Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[25]

38.     The harmful effects of exposure to cadmium has caused the FDA to set the maximum allowable level of cadmium in bottled water at 5 ppb.[26]

---

[18] Healthy Babies Bright Futures Report at 13.

[19] *Id.*

[20] *Id.*

[21] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced, cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."

[22] *Id.*

[23] 21 C.F.R. § 165.110; Subcommittee report at 4.

[24] Subcommittee report at 4.

[25] *Id.* at 12.

[26] *Id.* at 4.

**EXHIBIT 1**
**15**

**c.**   **Lead**

39.     Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[27] Lead is a number two on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[28]

40.     According to the FDA, lead is especially dangerous to infants and young children.[29] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[30]

41.     The harmful effects of lead have caused the FDA to set the maximum allowable levels in bottle water at 5 ppb of lead.[31]

**d.**   **Mercury**

42.     Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[32] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[33]

43.     Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[34]

44.     The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[35] Notably, according to the Subcommittee Report, Plum provided notes that it has "no specific threshold established because no high-risk ingredients are used" for testing its products for mercury. The Subcommittee stated

---

[27] Healthy Babies Bright Futures Report at 13.

[28] Subcommittee Report at 11.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 4.

[32] Healthy Babies Bright Futures Report at 14.

[33] Subcommittee Report at 12.

[34] *Id.* at 12–13.

[35] *Id.* at 4.

**EXHIBIT 1**
**16**

that this "misleading framing—of meeting criteria that do not exist—raises questions about what [Plum's] other thresholds actually are, and whether they exist."[36]

**D.      Plaintiff and Class Members' Reliance was Reasonable**

45.     Plaintiff and Class Members reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

46.     Plaintiff and Class Members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiff and Class Members known Plum's Products actually contained high levels of heavy metals, Plaintiff and Class Members would not have purchased the Products.

47.     A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiff and Class Members relied on the statements and omissions on the Products' labeling that led them to believe the Products were organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action individually and on behalf of all other similarly situated Class members pursuant to Code of Civil Procedure § 382, and seeks certification of the following Class:

> All persons within the State of California who purchased Plum Organic's Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

49.     Excluded from the Class are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

---

[36] *Id.* at 45.

CLASS ACTION COMPLAINT

**EXHIBIT 1**
**17**

50.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add subclasses before the Court determines whether certification is appropriate.

51.     ***Numerosity:*** The proposed Class is so numerous that joinder of all members would be impractical. The Products are sold throughout the State of California. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable. Accordingly, Class members are so numerous that their individual joinder herein is impractical.

52.     ***Existence and Predominance of Common Questions of Law and Fact***: There are questions of law and fact common to the proposed Class that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a.     whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b.     whether Defendant's use of packaging and advertising constituted false or deceptive advertising;

c.     whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d.     whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

e.     whether Plaintiff and the Class are entitled to damages and/or restitution, and in what amount;

f.     whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g.     whether Plaintiff and the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

53.     Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class Members. Similar or identical statutory and

**EXHIBIT 1**
**18**

common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Class flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children, and (b) the Products actually contain, or are at risk of containing, levels of toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

54. ***Typicality:*** The representative Plaintiff's claims are typical of those of the proposed Class, as all members of the proposed Class are similarly affected by Defendant's uniform unlawful conduct as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

55. ***Adequacy:*** Plaintiff will fairly and adequately protect the interests of the proposed Class, as her interests do not conflict with the interests of the members of the proposed Class she seeks to represent, and she has retained counsel competent and experienced in class action litigation. The interests of the members of the Class will be fairly and adequately protected by the Plaintiff and her counsel.

56. ***Superiority:*** The nature of this action and the laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class members are relatively modest to the burden and expense that would be entailed by individual litigation of their claims against Plum. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Plum would be permitted to retain the proceeds of its fraudulent and deceptive misdeeds. Defendant has also acted, or failed to act, on grounds generally applicable to

**EXHIBIT 1**
**19**

Plaintiff and the proposed Class, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

## FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 17500, *et seq*.**

57.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-56, as though fully set forth herein.

58.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant pursuant to the CLRA, Cal. Civ. Code § 1750, *et seq*.

59.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c), and the purchases of such Products by Plaintiff and members of the Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

60.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products have characteristics (i.e., are organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children) that they do not have. Therefore, Defendant has violated § 1770(a)(5) of the CLRA.

61.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., are organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children) which they are not. Therefore, Defendant has violated § 1770(a)(7) of the CLRA.

62.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children, but not intending to sell the Products as such, Defendant has violated § 1770(a)(9) of the CLRA.

**EXHIBIT 1**
**20**

63.     At all relevant times, Defendant has known or reasonably should have known that the Products contained or were at risk of containing levels of toxic heavy metals, and that Plaintiff and other members of the Class would reasonably and justifiably rely on the packaging in purchasing the Products.

64.     Plaintiff and members of the Class have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the Class.

65.     Plaintiff and members of the Class have suffered and continue to suffer injuries caused by Defendant because they would not have purchased them at all, had they known that the Products contain or were at risk of containing levels of toxic heavy metals.

66.     In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit A to this Complaint.

67.     On April 5, 2021, Plaintiff, by and through her counsel, sent a notice letter by certified mail to Plum of her intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782.

68.     If Defendant fails to respond to Plaintiff's letter, fails to agree to rectify the problems associated with the allegations detailed above, or fails to give notice to all affected consumers within 30 days of the date of written notice, as prescribed by § 1782, Plaintiff will move to amend her Complaint to pursue CLRA claims for actual, punitive, and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only equitable relief.

69.     Plaintiff requests that this Court enjoin Defendant from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future and to order restitution to Plaintiff and the Class. Plaintiff also requests an award of attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

/ / /

/ / /

**EXHIBIT 1
21**

## SECOND CLAIM FOR RELIEF

### Violation of California's False Advertising Law
### California Business & Professions Code § 17500, *et seq*

70.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-56, as though fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant pursuant to the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*

72.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

73.     Defendant has represented and continues to represent to the public, including Plaintiff and members of the Class, through its deceptive packaging, that the Products are organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

74.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the Class.

75.     Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to her and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**EXHIBIT 1**
**22**

## THIRD CLAIM FOR RELIEF

**Violation of California's Unfair Competition Law ("UCL"),
California Business & Professions Code § 17200*, et seq.***

76.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-56, as though fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

78.     The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

79.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and any other applicable laws described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the Class.

80.     Under the UCL, a business act or practice is "unfair" if it is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers as to the safety of the Products can make is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the Class.

81.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are safe and suitable for consumption by infants and young children. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and

**EXHIBIT 1
23**

practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

82.     Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## **FOURTH CLAIM FOR RELIEF**

### **Breach of Express Warranty**

83.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-56 as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant for breach of express warranty.

85.     California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

86.     Defendant has expressly warranted on the Product's packaging that the Products are organic, non-GMO, free from added preservatives and artificial flavors, and safe and suitable for consumption by infants and young children. However, the Products actually contain, or are at risk of containing, unsafe levels of toxic heavy metals.

87.      These representations about the Products: (a) are affirmations of fact or promises made by Defendant to consumers that the Products are organic, non-GMO, free from added preservatives and artificial flavors, and safe and suitable for consumption by infants and young children; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. Alternatively, the representations about the Products are descriptions of goods which

CLASS ACTION COMPLAINT

**EXHIBIT 1**
**24**

were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

88.     Plaintiff and members of the Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

89.     Defendant has breached the express warranties made to Plaintiff and members of the Class, as the Products contain or are at risk of containing levels of heavy toxic metals, rendering them unsafe and unsuitable for consumption by infants and young children.

90.     Plaintiff and members of the Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the Class had known of the true nature of the Products, they would not have purchased the Products at all.

91.     As a result, Plaintiff and members of the proposed Class suffered injury and deserve to recover all damages afforded under the law.

92.     Within a reasonable amount of time after Plaintiff discovered that Defendant did in fact breach the express warranty, Plaintiff notified Defendant of the breach.

## FIFTH CLAIM FOR RELIEF

### Breach of Implied Warranty

93.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-56 as if fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant for breach of implied warranty.

95.     California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

96.     California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2).

97.     Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

**EXHIBIT 1**
**25**

98. By advertising the Products with their current packaging, Defendant made an implied promise that the Products are organic, non-GMO, free from added preservatives and artificial flavors, and safe and suitable for consumption by infants and young children. The Products have not "conformed to the promises . . . made on the container or label" because they actually contain, or are at risk of containing, unsafe levels of toxic heavy metals, rendering them unsafe and unsuitable for consumption by infants and young children. Plaintiff, as well as California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

99. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

100. If Plaintiff and members of the Class had known that the Products contained levels of toxic heavy metals, they would not have purchased them at all. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the Class have suffered injury and deserve to recover all damages afforded under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully prays for following relief:

A. Certification of this case as a class action on behalf of the Class defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B. A declaration that Defendant's actions, as described herein, constitute violations of the law as described herein;

C. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct, trebled where appropriate;

D. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, the Class, and the consuming Public, including, inter alia, an order prohibiting Defendant from engaging in the unlawful acts described herein;

E. An award to Plaintiff and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that

**EXHIBIT 1
26**

Defendant obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

F.      An award to Plaintiff and her counsel of their reasonable expenses and attorneys' fees;

G.      An award to Plaintiff and the proposed Class of pre- and post-judgment interest, to the extent allowable; and

H.      For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a jury trial with respect to all claims so triable.

Dated: April 5, 2021                    **CARLSON LYNCH LLP**

                                By:    */s/Todd D. Carpenter*
                                       Todd D. Carpenter (234464)
                                       tcarpenter@carlsonlynch.com
                                       Scott G. Braden (305051)
                                       sbraden@carlsonlynch.com
                                       1350 Columbia St., Ste. 603
                                       San Diego, CA 92101
                                       Tel.:    619-762-1900
                                       Fax:    619-756-6991

                                       *Attorneys for Plaintiff and the Putative Class*

**EXHIBIT 1**
**27**

# EXHIBIT A

EXHIBIT 1
28

**CARLSON LYNCH, LLP**
Todd D. Carpenter (234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:     619-762-1910
Fax:     619-756-6991

*Attorneys for Plaintiff and Class Counsel*

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| MAYRA MOORE, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>PLUM, INC. D/B/A PLUM ORGANICS; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No.:<br><br>[E-FILE]<br>**DECLARATION IN SUPPORT OF JURISDICTION** |

I, Todd D. Carpenter, declare under penalty of perjury the following:

1.      I am an attorney duly licensed to practice before all of the courts in the State of California. I am a partner and part-owner of Carlson Lynch LLP and counsel of record for Plaintiff in the above-entitled action.

2.      Defendant Plum, PBC ("Plum") has done and is doing business in the County of San Diego. Such business includes the marketing, distributing, and retail and online sales of baby food products.

3.      Plaintiff Mayra Moore purchased a variety of Plum's baby food products, including, but not limited to, the following:

    a.      Plum Organics Stage 1 (4+ months) Just Sweet Potato Organic Baby Food Pouch

    b.      Plum Organics Stage 2 (6+ months) Mango, Sweet Potato, Apple & Millet Organic Baby Food Pouch

    c.      Plum Organics Stage 2 (6+ months) Mango, Yellow Zucchini, Corn & Turmeric Organic Baby Food Pouch

1

**EXHIBIT 1**
**29**

d.   Plum Organics Stage 2 (6+ months) Pea, Kiwi, Pear & Avocado Organic Baby Food Pouch

e.   Plum Organics Stage 2 (6+ months) Peach, Banana & Apricot Organic Baby Food Pouch

f.   Plum Organics Stage 2 (6+ months) Pear & Mango Organic Baby Food Pouch

g.   Plum Organics Stage 2 (6+ months) Pear, Purple Carrot & Blueberry Organic Baby Food Pouch

h.   Plum Organics Stage 2 (6+ months) Pear, Spinach & Pea Organic Baby Food Pouch

i.   Plum Organics Stage 2 (6+ months) Sweet Potato, Apple & Corn Organic Baby Food Pouch

j.   Plum Organics Banana with Pumpkin Little Teethers Wafers

k.   Plum Organics Blueberry Little Teethers Wafers

l.   Plum Organics Tots Jammy Sammy–Peanut Butter & Strawberry Bar

4.   Plaintiff purchased these products from Sprouts and Target Stores in San Diego County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed April 5, 2021, in San Diego, California.

Dated: April 5, 2021

**CARLSON LYNCH LLP**

By:   */s/Todd D. Carpenter*
Todd D. Carpenter (234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (305051)
sbraden@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:   619-762-1900
Fax:   619-756-6991

*Attorneys for Plaintiff and the Putative Class*

DECLARATION IN SUPPORT OF JURISDICTION   **EXHIBIT 1**
**30**